UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ROSANNA SANTORO,

                Plaintiff,

    - against -

GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS, P.C. and AL RENZ
*in his individual and professional capacities.*

                Defendants.
---------------------------------------------------------------X

Case No. 23 Civ. 489

**COMPLAINT**

    Plaintiff Rosanna Santoro hereby complains of Defendants Grassi & Co. Certified Public Accountants, P.C. (the "Company," or "Grassi") and Al Renz (the "Individual Defendant"), upon personal knowledge, as well as information and belief, by alleging and averring as follows:

### NATURE OF THE CASE

    1.    This is a case in which Grassi – a company that was founded in 1980 and has grown into one of the nation's largest accounting firms – allowed Defendant Al Renz to subject Plaintiff Rosanna Santoro, a Certified Public Accountant ("CPA") and highly accomplished director-level employee, to a relentless campaign of gender-based harassment that engendered an unlawful hostile work environment, merely because Mr. Renz could not envision a female worker like Ms. Santoro serving in anything but a subservient, clerical role.

    2.    Ultimately, after Ms. Santoro engaged in protected activity by objecting to Mr. Lenz's discriminatory conduct and active attempts at marginalizing and undermining her, Grassi abruptly and unlawfully terminated Ms. Santoro's employment.

3. Ms. Santoro therefore brings this action against Grassi and Al Renz for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") and the New York State Human Rights Law, New York State Executive Law, §§ 296, et seq. ("NYSHRL").

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 as it is based on claims under Title VII.

5. The Court has supplemental jurisdiction over Plaintiff's claims under state law pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as Defendant resides within the Eastern District of New York, or a substantial part of the acts complained of herein occurred therein.

## ADMINISTRATIVE REQUIREMENT

7. On or about January 21, 2021, Plaintiff filed a charge of discrimination related to the facts and allegations set forth herein with the Equal Employment Opportunity Commission ("EEOC").

8. The EEOC issued Plaintiff a Notice of Right to Sue on or about November 23, 2022. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

9. Plaintiff is an adult resident of the state of New York, and County of Nassau.

10. At all times relevant hereto, Defendant Grassi was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of the laws of the State of New York and maintains its principal place of business at 50 Jericho Quadrangle, Suite 200, Jericho, NY 11753.

11. At all times relevant hereto, Plaintiff was an "employee" of Grassi and Grassi an "employer" of Plaintiff pursuant to all applicable statutes.

12. At all times relevant hereto, Defendant Renz was an employee of Grassi, holding the position of Chief Financial Officer ("CFO").

13. At all times relevant hereto, Defendant Renz was Plaintiff's supervisor and had supervisory authority over Plaintiff.

14. At all times relevant hereto, Defendant Renz had the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment. Renz was an "employer" of Plaintiff, and Plaintiff an "employee" of Mr. Renz, pursuant to all applicable statutes.

## FACTUAL ALLEGATION

### I. Plaintiff's Successful Employment at Grassi

15. In August 2020, Plaintiff agreed to join Grassi as the Director of Finance, after rejecting an offer to become the Director of Finance and Accounting for a medical device and biopharmaceutical company.

16. Plaintiff was hired by the then-CFO Dan Socci, to whom she initially reported. Plaintiff and Mr. Socci had a good working relationship and successfully collaborated on many projects.

17. Plaintiff successfully performed all facets of her job and received overwhelmingly positive performance reviews and feedback. Plaintiff did not receive any complaints or warnings, formal or informal, about her performance during her 11-month Grassi tenure.

### II. Defendant Renz is Hired as CFO and Immediately Marginalizes Plaintiff and Treats Her Like a Clerical Worker

18. In late February 2021, Mr. Socci left Grassi, and Defendant Renz became its CFO.

19. From the onset of his supervision, Defendant Renz, who is not a CPA, was condescending, brusque, and dismissive towards Plaintiff.

20. For instance, Defendant Renz made no effort to learn basic elements of the software used by the Company and would instead constantly interrupt Plaintiff every few minutes to complete a battery of menial, clerical tasks.

21. Moreover, often when Plaintiff would try to speak to Defendant Renz about work matters in his office, he would abruptly stop in the middle of the conversation and rudely answer personal phone calls on his cell phone, demonstrating his utter lack of respect for Ms. Santoro and her time.

22. Defendant Renz also frequently interrupted and cut off Plaintiff mid-sentence when she spoke.

23. To make her life unnecessarily difficult, Defendant Renz never explained the objective or purpose of any financial analysis of the Company's performance, financial projections, statistics, etc., he told Plaintiff to undertake, hamstringing Plaintiff's ability to do her job.

24. When Plaintiff submitted work to Defendant Renz, he would not engage in any discussions about the substance of the work but instead on minutiae like text color and what a file was named. Defendant Renz's behavior indicated that he regarded Plaintiff was more like a secretary than a Director of Finance.

25. Defendant Renz would fail to provide clear work instructions to Plaintiff, which would saddle her with trivial clerical tasks that could have only been avoided if she was a mind reader or could predict what idiosyncratic formatting or grammatical preferences Mr. Renz would want for a particular document or report.

26. None of the partners of Grassi were able to see the value of Plaintiffs' work because Defendant Renz would also block Plaintiff's visibility to Grassi's partner by prohibiting her from corresponding directly with them, which diminished Plaintiff's value and contributions to the Company in the partners' eyes. Defendant Renz would even put his name on Plaintiff's work and take credit as the author.

27. Defendants also failed to ensure that Plaintiff was properly trained on how to use a timekeeping and billing software called STAR, even though, upon information and belief, Defendant Renz ensured that male employees received this trading, including an Administrator named Greg Fernan and the man who ultimately replaced Plaintiff after she was unlawfully fired, Bob Lazarra.

28. Defendant Renz would also inexplicably exclude Plaintiff from meetings that were germane and critical to her job yet include the far younger and less-experienced Mr. Fernan in these meetings. Notably, the female Director of the Billing Department, Dianne Cascino, was also inexplicably excluded from meetings that were highly germane to her role, and she was only invited to attend after she complained.

### III. Plaintiff Complains About Gender Discrimination

29. Defendant Renz's discrimination against Plaintiff because she was a woman was even clear to colleagues, who observed and expressed to Plaintiff how disturbed they were by how he treated her.

30. Plaintiff complained about Defendant Renz's ongoing harassment and discrimination to Ms. Cascino. Upon information and belief, Ms. Cascino also complained herself about Defendant Renz to Chief Operating Officer and Partner, Ronald Eager, and even told Mr. Eager that Plaintiff was also fed up with Defendant Renz's discriminatory behavior.

31. On June 23, 2021, Plaintiff complained to Mr. Eagar about Defendant Renz, including how he constantly interrupted her when she spoke, and how he would assign menial, clerical work to female employees, despite their title or role.

32. Plaintiff also told Mr. Eagar how Mr. Renz dismissively rejected her recommendation for the Company to use a budget modeling program called Adaptive, but later changed his mind after a male employee (Mr. Fernan) endorsed the program.

33. Notably, Defendant Renz treated Mr. Fernan radically better than Plaintiff, as he never interrupted Mr. Fernan when he spoke nor was he dismissive towards Mr. Fernan's opinions and ideas.

34. Plaintiff also complained to Mr. Eagar about how Defendant Renz would bizarrely hide the purpose behind the assignments he would give her and would prohibit her from communicating with partners and other upper management, and take sole credit for her good work, for which he would receive praise.

35. Significantly, Plaintiff told Mr. Eagar that Defendant Renz disrespectful of and dismissively talked down to her, and micro-managed her work. Plaintiff told Mr. Eager that Defendant Renz did not like to work with women, makes her feel that her opinion did not matter because she was a woman, and that she was not the only female Grassi employee who felt this way and/or observed him mistreat her.

36. Incredibly, Mr. Eagar told Plaintiff that he had told Defendant Renz that he could "do whatever he saw fit with the Finance Department and run it his way." At no time did Mr. Eagar tell Plaintiff that he or any other employee at Grassi would launch any type of investigation into her gender discrimination complaint.

37. Within days of complaining to Mr. Eagar, however, Defendant Renz repeatedly postponed administering Plaintiff's Peer Partner review. While Plaintiff assumed that Defendant Renz had to postpone these meetings for legitimate work-related reasons, little did she know that he was actually working behind the scenes to engineer her eventual unlawful ouster.

38. Additionally, a few days after meeting with Mr. Eagar, Plaintiff caught him and Defendant Renz secretively discussing her in Defendant Renz's office.

**IV. Just One Week After Her Protected Complaints, Grassi Unlawfully Terminates Plaintiff's Employment**

39. Following Plaintiff's June 23, 2021, when meeting with Mr. Eagar, Defendant Renz avoided and barely spoke to her, communicating strictly through email.

40. When Plaintiff showed up for her Peer Partner review on July 1, 2021, she was surprised to see Chief Human Resources Officer, Jeff Agranoff, also in Defendant Renz's office, who promptly told Plaintiff that "the Finance Department had gone through some changes and there would be additional changes." Defendant Renz, for his part, called Plaintiff's work "sub-par.".

41. In complete shock, Plaintiff immediately defended herself against Defendant Renz's baseless characterization of her performance, reminding him how unclear his instructions (if he ever bothered to give any) to her were, and how he was dismissive and unapproachable. Plaintiff pointedly told Defendant Renz, "you don't work well with women; you don't like us."

42. Although Plaintiff was making it clear that she had experienced sex discrimination, Mr. Agranoff failed to respond or indicate that there would be any investigation into her allegations.

7

43. Instead, Plaintiff was unceremoniously fired right then in Defendant Renz's office – within earshot of everyone in the Finance Department and other employees sitting in the surrounding cubicles. Plaintiff gathered her belongings and left tearful and humiliated.

## V. Grassi Replaces Plaintiff with Defendant Renz's Male Friend

44. To add further insult to injury, Plaintiff later learned that within his first month at Grassi, Defendant Renz had apparently recruited a male friend of his to take over Plaintiff's job. To put it differently, before Mr. Renz could form a *bona fide* opinion of Plaintiff's performance and ability to do her job, he had somehow already determined that she could not do her job and decided to and replace her with a male comrade.

45. As such, Plaintiff clearly was never given a "fair shake" by Defendant Renz who was unlawfully and relentlessly targeted and discriminated against her because she was a woman. Moreover, had she not engaged in protected activity by accusing Mr. Renz of sex discrimination, Plaintiff's employment would not have been terminated.

46. Grassi has also unlawfully refused to pay out Plaintiff for her 41.46 hours in accrued, unused paid time off at the time of her firing.

47. Lastly, despite Defendants' baseless characterizations of her performance at Grassi, Plaintiff has been anything but incompetent in her impressive career, and in fact, she presently works as a Controller at a large national professional services firm, supervising a staff numbering in the double digits. Plaintiff is also considered a senior staff member at this firm and is involved in many significant business decisions and meetings. Furthermore, Plaintiff handles accounting functions for the entire firm and is, thankfully, treated fairly and respectfully, and has even received a raise and bonus within just four months of starting this job.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
## (Against Grassi)

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

49. Based on the facts alleged herein, Defendant Grassi has engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff and subjecting her to a hostile work environment because of her gender/sex (female).

50. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

51. Accordingly, as a result of Grassi's unlawful conduct set forth herein, Plaintiff has been damaged and is entitled to maximum compensation available to her under the law, including, but not limited to, punitive damages.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
## (Against Grassi)

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

53. Based on the facts alleged herein, Defendant Grassi engaged in unlawful employment practices prohibited by Title VII by retaliating against Plaintiff for engaging in protected activity by complaining of discrimination based on her gender/sex (female).

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, economic and pecuniary losses (past and future) – such as income, salary, bonuses, and other compensation that her employment entailed, severe emotional, psychological and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

55. Accordingly, as a result of Grassi's conduct set forth herein, Plaintiff has been damaged and is entitled to maximum compensation under this law, including, but not limited to, punitive damages.

## THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL
## (Against All Defendants)

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

57. New York State Executive Law § 296 states in pertinent part:

> 1(a). It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

58. Defendants engaged in unlawful discriminatory practice by discriminating against Plaintiff with respect to the terms and conditions of her employment and subjecting her to a hostile work environment on the basis of her gender/sex (female), in violation of the New York State Human Rights Law.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, economic and pecuniary losses,

severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

60. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYSHRL
### (Against All Defendants)

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

62. New York State Executive Law § 296 states in pertinent part:

> 7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

63. As described above, Defendants unlawfully retaliated against Plaintiff for engaging in protected activities pursuant to the NYSHRL by terminating her employment, in violation of the NYSHRL.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, economic and pecuniary losses, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

65. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff has been damages as set forth herein and is entitled to the maximum compensation available under this law.

## FIFTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYSHRL
## (Against Individual Defendant Only)

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if said paragraphs were fully set forth herein at length.

67. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

68. Defendant Renz engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct against Plaintiff.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, damages, including, but not limited to, economic and pecuniary losses, severe emotional, psychological, and physical stress, distress, anxiety, pain and suffering, the inability to enjoy life's pleasures, and other non-pecuniary losses and special damages.

70. Accordingly, as a result of Defendant Renz's unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under this law.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited under federal and state laws by discriminating and retaliating against Plaintiff on the basis of her gender/sex;

B. Awarding economic damages to Plaintiff;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: White Plains, New York
January 23, 2023

_____
Tanvir H. Rahman
**FILIPPATOS PLLC**
Attorneys for Plaintiff
199 Main Street, Suite 800
White Plains, NY 10601
Tel: 914-984-1111
Fax: 914-984-1111
trahman@filippatoslaw.com

13